**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIGUEL MAGALLON DIAZ,      ) | NO. EDCV 08-1919 SS |
|              Plaintiff,    ) | |
|                  ) | **MEMORANDUM DECISION AND ORDER** |
|        v.            ) | |
| MICHAEL J. ASTRUE,       ) | |
| Commissioner of the Social  ) | |
| Security Administration,   ) | |
|                  ) | |
|           Defendant.   ) | |
| _____) | |

**I.**

**INTRODUCTION**

Miguel Magallon Diaz ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

**II.**

**PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on August 5, 2004. (Administrative Record ("AR") 57-60). He alleged a disability onset date of June 4, 2004 (AR 57) due to osteomyelitis in the spine and diabetes. (AR 80, 140). The Agency denied Plaintiff's claim for DIB initially on September 14, 2004. (AR 26-30). This denial was upheld upon reconsideration on December 9, 2004. (AR 32-36).

On December 4, 2006, a hearing was held before Administrative Law Judge ("ALJ") Peter J. Valentino. (AR 1201-28). The ALJ denied benefits in a written decision dated December 15, 2006. (AR 16-24). On January 25, 2007, Plaintiff sought review of the unfavorable decision. (AR 15). The Appeals Council declined review on October 28, 2008. (AR 5-7). Plaintiff commenced the instant action on December 24, 2008.

**III.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

2

months.  <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

3

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

---

[2]   Residual functional capacity is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record."  20 C.F.R. §§ 404.1545(a), 416.945(a).

**IV.**

**THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (AR 21).

At step two, the ALJ determined that Plaintiff had the severe impairments of spinal disc disease, history of osteomyelitis, thoracic radiculopathy, chronic back pain, diabetes mellitus, and hypertension. (Id.).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Id.).

At step four, the ALJ found that Plaintiff retained the RFC to perform light work, with occasional postural activities and no climbing of ladders, ropes, or scaffolds.[3]  (Id.).  The ALJ determined that Plaintiff was capable of performing his past relevant work as a supervisor of a wheels and rims assembly line. (AR 23).  Therefore, the ALJ concluded that Plaintiff was not disabled.  (Id.).

///

_____

[3]  Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b), 416.967(b).

5

# V.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

///
///
///
///
///
///
///

**VI.**

**DISCUSSION**

**A.**   **Remand Is Required For Further Consideration Of Dr. Ralph Steiger's Opinion**

Plaintiff contends that the ALJ failed to properly consider Dr. Ralph Steiger's opinion. (Jt. Stip. at 5-6). Specifically, Plaintiff claims that the ALJ failed to provide clear and convincing reasons for rejecting Dr. Steiger's opinion. (Jt. Stip. at 6). Defendant argues that the ALJ provided specific and legitimate reasons for the rejection. (Jt. Stip. at 8-9). As set forth below, the Court agrees with Plaintiff.

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). An examining physician's opinion, in turn, generally is afforded more weight than a nonexamining physician's opinion. Orn, 495 F.3d at 631.

If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion by providing "'specific and

7

legitimate reasons' supported by substantial evidence in the record." Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007) (quoting Reddick, 157 F.3d at 725).

As with a treating physician, the ALJ must present "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician and may reject the controverted opinion of an examining physician only for "specific and legitimate reasons that are supported by substantial evidence." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31).

On December 7, 2004, Dr. Steiger, a worker's compensation examining physician, conducted an orthopedic evaluation of Plaintiff.  (AR 981-93).  Plaintiff reported that he had frequent slight to moderate right knee and leg pain; constant slight lower back pain, which was intermittently slight to moderate; and intermittent, slight neck pain. (AR 988).  An examination of the cervical spine revealed: moderate tenderness on palpation at the base of the occiput, upper trapezius, levator scapulae, and rhomboid muscles, bilaterally, with no evidence of muscle spasm, rigidity, or trigger points upon palpation of these muscles; pain at the base of the neck with axial compression testing; decreased range of motion in flexion, extension, right and left lateral bending, and right and left rotation.  (AR 983-84).  Dr. Steiger also noted that Plaintiff had decreased range of motion of the right shoulder with tenderness on palpation of the coracoid process, biceps, acromioclavicular joint, and supraspinatus musculature.  (AR 984).

8

Dr. Steiger also examined Plaintiff's thoracolumbar spine, which revealed: ambulation with a right antalgic gait and with the right knee bent; difficulty heel walking; toe walking performed satisfactorily; moderate tenderness of the upper and lower lumbar spine and of the posterior-superior iliac spines, bilaterally; no evidence of muscle spasm or trigger points in the paravertebral muscles; decreased range of motion in flexion, extension, right and left lateral bending, and right and left rotation; positive straight leg raising in the sitting and supine position; and positive signs of right sciatic nerve root irritability. (AR 985-86). His examination of Plaintiff's right knee demonstrated crepitus of the medial compartment; tenderness of the medial and lateral joint lines; and decreased range of motion in flexion and extension. (AR 986). Dr. Steiger noted that Plaintiff was only able to partially squat due to knee pain. (Id.). He also conducted a neurological examination which revealed: sensation in both upper extremities were intact; deep tendon reflexes in the upper extremities were "unobtainable" at the biceps, triceps, and brachioradialis, bilaterally; presence of hypesthesia in the right leg and foot; and deep tendon reflexes at the ankles were "unobtainable," bilaterally. (AR 984, 986).

Dr. Steiger also commented that x-rays taken on that same date revealed "anterior lipping and bridging at multiple levels of the thoracic spine and . . . narrowing of the disc space and some scalloping in the superior end plate of what is probably T6-7 of this film." (AR 987). He diagnosed Plaintiff with, inter alia, chondromalacia patella and internal derangement of the right knee; musculoligamentous sprain of the lumbar spine with lower extremity radiculitis; musculoligamentous

9

sprain of the cervical spine; and status post thoracotomy in the right chest for infection in the thoracic spine. (Id.). Dr. Steiger assess Plaintiff's work restrictions as follows: no heavy lifting or repetitive bending and stooping; no repetitive twisting; no prolonged neck movement; no heavy pushing or pulling; no prolonged weight bearing; no repetitive squatting or climbing; and no crawling or kneeling on the right knee. (AR 989). He commented that Plaintiff was a "qualified injured worker" who was "unable to return to his previous occupation" as a forklift driver.[4] (AR 982, 989).

Dr. Steiger's opinion contradicted that of Dr. George Weilepp, the medical expert who testified at the December 4, 2006 hearing. (AR 1216-22). Dr. Weilepp testified that, based on the medical records, Plaintiff could perform "sedentary, light" work activities. (AR 1218-19). Specifically, Dr. Weilepp assessed the following limitations: sit for six hours, two hours at a time with normal breaks; stand for six hours, an hour and a half to two hours at a time with normal breaks; occasional kneeling, crawling, and squatting; frequent lifting and bending; no heights or ladders; and no heavy industrial vibration or dangerous equipment. (AR 1219-21).

The ALJ relied on Dr. Weilepp's opinion in finding that Plaintiff retained the RFC to perform light work, with occasional postural activities and no climbing of ladders, ropes, or scaffolds. (AR 21-22).

---

[4] On August 10, 2005, Dr. Steiger completed a supplemental medical report, in which he summarized various medical records from Plaintiff's treating physicians. (AR 1190-98). Based on his review of the records, he concluded that his December 7, 2004 assessments remained unchanged. (AR 1196).

In so doing, the ALJ discounted a portion of Dr. Steiger's opinion, stating:

> Dr. Steiger also merely precluded [Plaintiff] from heavy lifting or repeated bending or stooping, repetitive twisting, prolonged neck movement, heavy pushing or pulling, and repetitive squatting or climbing. Although Dr. Steiger also precluded [Plaintiff] from prolonged weight bearing, crawling, or kneeling, upon examination he found only pain, tenderness, and crepitus of the right knee, with loss of motion, hypesthesia, and absent ankle reflexes. Remaining knee signs were normal and knee pain was only slight to moderate. I do not agree with Dr. Steiger, but rather, agree with Dr. Weilepp, as to [Plaintiff's] capacity for performing the standing and walking requirements of light work, and performing occasional crawling or kneeling. In fact, Dr. Steiger found [Plaintiff] able to perform toe walking, there were no spasms or trigger points, sensation was intact in the upper extremities, low back pain was slight and only intermittently slight to moderate, and neck pain was only intermittent and slight (Exhibit 13F).

(AR 22).

As Dr. Steiger's opinion was contradicted by Dr. Weilepp's testimony, the ALJ was required to provide specific and legitimate reasons for rejecting the portion of Steiger's opinion concerning Plaintiff's ability to bear weight, crawl, and kneel. Carmickle, 533 F.3d at 1164. Here, the ALJ failed to satisfy this obligation. Specifically, the ALJ's finding that Dr. Steiger's opinion was not

11

supported by his own clinical findings was not legally sufficient to reject his opinion.  Although the ALJ noted several findings indicating that Plaintiff's condition was not as severe as Dr. Steiger assessed (e.g., able to perform toe walking, no spasms or trigger points, sensation was intact in the upper extremities, constant lower back pain which was intermittently slight to moderate, and neck pain was intermittent and slight), he failed to discuss the other findings that did support the physician's opinion.  For example, Dr. Steiger also observed: moderate tenderness in the base of the occiput, upper trapezius, levator scapulae, and rhomboid muscles; decreased range of motion of the cervical spine in all directions; decreased range of motion of the right shoulder; tenderness of the coracoid process, biceps, acromioclavicular joint, and supraspinatus musculature; right antalgic gait with difficulty heel walking; moderate tenderness of the upper and lower lumbar spine and of the posterior-superior iliac spine; decreased range of motion of the thoracolumbar spine in all directions; reduced straight leg raising in the sitting and supine position with positive signs of right sciatic nerve root irritability; and limitation to partial squat due to knee pain.  (AR 983-86).  The ALJ's selective reliance on only portions of the report from Dr. Steiger was misleading and failed to constitute substantial evidence.[5]  See Reddick, 157 F.3d at 723 (it is impermissible for the ALJ to develop an evidentiary basis

---

[5]  Although Dr. Steiger found that Plaintiff could not bear weight for a prolonged period, crawl, or kneel due to his right knee impairment, it is reasonable to assume that Plaintiff's back and right shoulder impairments would also contribute to these functional limitations.  (AR 989).  As such, the ALJ should have properly considered the clinical findings concerning Plaintiff's back and right shoulder.

by "not fully accounting for the context of materials or all parts of the testimony and reports"); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984) (an ALJ may not reach a conclusion and justify it by ignoring competent evidence in the record that would suggest an opposite result).

Furthermore, the ALJ failed to translate Dr. Steiger's workers' compensation findings into Social Security terms.  Although workers' compensation disability ratings are not controlling in Social Security cases, an ALJ must nevertheless evaluate medical opinions stated in workers' compensation terminology just as he would evaluate any other medical opinion.  <u>Macri v. Chater</u>, 93 F.3d 540, 544 (9th Cir. 1996); <u>Desrosiers v. Secretary of Health & Human Services</u>, 846 F.2d 573, 576 (9th Cir. 1988); <u>Booth v. Barnhart</u>, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002).  The ALJ must "translate" terms of art contained in such medical terminology in order to accurately assess the implications of those opinions for the Social Security disability determination.  <u>See</u> <u>Desrosiers</u>, 846 F.2d at 576).  "While the ALJ's decision need not contain an explicit `translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence.'"  <u>Booth</u>, 181 F. Supp. 2d at 1105.  Here, Dr. Steiger made findings relevant to his workers compensation evaluation that were not translated for determining Plaintiff's eligibility for social security benefits. (<u>See</u> AR 988-989).

Accordingly, the ALJ's failure to provide specific and legitimate reasons for rejecting Dr. Steiger's opinion constitutes error.  This case must be remanded for further consideration of Dr. Steiger's report.

**B.   Remand Is Required For Further Consideration Of The Lay Witness Testimony Of Pauline Mendoza**

Plaintiff claims that the ALJ failed to consider the lay witness testimony of his friend, Pauline Mendoza.  (Jt. Stip. at 12).  Defendant argues that Ms. Mendoza's statements are immaterial as they would not render Plaintiff disabled even when fully credited.  (Jt. Stip. at 14).  For the following reasons, the Court agrees with Plaintiff's contention and remands the case for further proceedings on this issue.

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288; 20 C. F. R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  The ALJ may discount the testimony of lay witnesses only if he gives "reasons that are germane to each witness."  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); see also Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.") (citations omitted).  An ALJ's failure to consider competent lay witness testimony favorable to the claimant is harmless error only if the reviewing court "can confidently conclude that no reasonable ALJ, when

14

fully crediting the testimony, could have reached a different disability determination." <u>Stout</u>, 454 F.3d at 1056.

On November 22, 2004, Ms. Mendoza completed a third party function report describing Plaintiff's daily activities and abilities. (AR 115-23). She reported that she has known Plaintiff for 16 years and sees him every other day. (AR 115). Ms. Mendoza commented that Plaintiff did not prepare his own meals because he had difficulty using his right arm and experienced shortness of breath. (AR 117). She also noted that Plaintiff did not do any household chores due to pain and shortness of breath. (AR 117-18). Ms. Mendoza stated that Plaintiff could sit down for only short periods of time. (AR 119). She noted that Plaintiff did not go out very much and when he did, he sometimes had his wife accompany him because he got drowsy from his medication. (AR 119-20). Ms. Mendoza reported that Plaintiff's condition affected his ability to lift, squat, bend, stand, reach, walk, sit, see, climb stairs, remember, understand, and follow instructions. (AR 120). In particular, she commented that Plaintiff could lift 5 to 15 pounds; could walk for 30 minutes before needing to rest for 20 to 25 minutes; and could pay attention for 30 minutes. (<u>Id.</u>). Ms. Mendoza noted that Plaintiff was "very depressed and scared for his health." (AR 121). She stated that Plaintiff purchased a cane and used it for support "all the time" because he had pain in his back and legs. (<u>Id.</u>).

Here, the ALJ failed to consider the lay witness statement of Ms. Mendoza. In his decision, the ALJ did not even mention the third party function report completed by Ms. Mendoza. The ALJ's failure to consider Ms. Mendoza's statement was error. <u>See</u> <u>Dodrill</u>, 12 F.3d at 919

15

("Disregard of [lay witness statements] violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2).") (quoting <u>Spraque v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987)).

The Court does not find that the ALJ's failure to consider Ms. Mendoza's statement was harmless. Contrary to Plaintiff's contention, Ms. Mendoza provided clear assessments of the extent of Plaintiff's functional limitations, which suggested that Plaintiff was disabled. Specifically, Ms. Mendoza noted that Plaintiff could lift only 5 to 15 pounds and walk for only 30 minutes before needing to rest for 20 to 25 minutes. (AR 120). The Court cannot conclude that no reasonable ALJ would have found Plaintiff disabled if Ms. Mendoza's statements were fully credited. <u>See</u> <u>Stout</u>, 454 F.3d at 1056. Accordingly, remand is warranted on this issue.

**C.   Remand Is Required For Further Consideration Of The Physical Demands Of Plaintiff's Past Relevant Work**

Plaintiff argues that the ALJ's decision that Plaintiff was capable of returning to his past relevant work as a supervisor for a wheel and rims shop was not supported by substantial evidence of record. (Jt. Stip. at 15-16). Specifically, Plaintiff contends that the ALJ mischaracterized Plaintiff's past relevant job as "light" work . (Jt. Stip. at 16). Defendant asserts that the ALJ properly relied on the testimony of Plaintiff and the vocational expert in determining the

16

physical exertional requirements of Plaintiff's past relevant work. (Jt. Stip. At 18-19).

At step four of the five-step sequential evaluation, the claimant carries the burden of proving that he can no longer perform his past relevant work. <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e) and 416.920(e)). Specifically, the claimant is required to prove that he cannot return to his "former type of work" as that work is generally performed, not just that he cannot return to his particular job. <u>See</u> <u>Villa v. Heckler</u>, 797 F.2d 794, 798 (9th Cir. 1986). Although the burden of proof lies with the plaintiff at step four, the ALJ has the duty to make factual findings to support his ultimate conclusion. <u>Pinto</u>, 249 F.3d at 844. The ALJ can meet this burden by comparing the physical and mental demands of the past relevant work with the plaintiff's actual RFC. <u>Id.</u> at 845.

Plaintiff has past relevant work experience as a forklift operator and a supervisor for a wheels and rims shop. (AR 23, 81, 92-95, 140-41, 147-49). In his disability report, Plaintiff reported that he had worked as a supervisor for two different wheels and rims shops from 1973 through 1996 or 1997 and as a forklift operator from 1998 through 2004. (AR 81, 140-41, 1208). He noted that his supervisor job at the first wheels and rims shop entailed supervising employees, managing inventory, and operating machines. (AR 81, 141). Plaintiff stated that this position required walking and standing for 8 hours a day, lifting up to 75 to 80 pounds, and frequently lifting 50 pounds. (<u>Id.</u>). He reported that he lifted car rims and placed them on pallets that were 2 to 3 feet away from him. (<u>Id.</u>). In his work history report, Plaintiff provided

17

similar descriptions of his supervisor position at the first wheels and rims shop. (AR 93, 148-49). He also noted that the duties and physical requirements of his first supervisor job were similar to those of his second supervisor job. (AR 93-94).

Plaintiff reported in his work history report that his job as a forklift operator required him to fill orders, load and unload trucks, and drive forklifts. (AR 95). He stated that the physical requirements of this job included walking and standing for 8 to 9 hours a day, sitting for 4 to 5 hours a day, lifting up to 70 to 80 pounds, and frequently lifting 50 pounds. (<u>Id.</u>). Plaintiff noted that he loaded plastic and steel pipes into trucks and carried hoses, plastic pipes, and tools a distance of 8 to 10 feet. (<u>Id.</u>).

Plaintiff appeared at the hearing with his counsel and testified through an interpreter.[6] (AR 1203-14, 1222-25). Plaintiff stated that his work as a supervisor entailed "looking at the production" and "watching the persons." (AR 1224). When questioned by the ALJ about whether he did "actual work" or just simply "made sure that the employees were doing their work," Plaintiff responded that he would "render some documents of what had taken place during the shift" and give them to his manager. (<u>Id.</u>). The following colloquy then ensued:[7]

> VE:   [Plaintiff], when I reviewed your file, the job that you
>       had supervising the wheels and rims business, it said

---

[6]  At the hearing, Plaintiff's counsel informed the ALJ that she communicated with Plaintiff in Spanish with the aid of his niece, who acted as his interpreter. (AR 1204).

[7]  "VE" refers to the vocational expert. "PLF" refers to Plaintiff.

18

1          that you work as a machine operator and that you loaded
2          and unloaded pallets.
3   ALJ: Well that's when he worked as a forklift operator.
4   VE:  Right, but it was under that.
5   ALJ: Well, I don't think so.
6   PLF: No, that is mixed up with what I did for [the forklift
7          operator job].
8   ALJ: For [the forklift operator job], that's right.
9   VE:  Okay.  Could you briefly describe your job at . . . the
10          wheel and rim shop?
11  ALJ: He supervised people who did that work.
12  PLF: Describe it right now?
13  VE:  Okay.  You only supervised.
14  PLF: I was supervisor, and I had to report, watch the people
15          that was working in the machinery, and I had to render
16          information to see if that particular machine was going
17          to produce 200 rims, and if it only produce 150, I have
18          to give them a reason why was it that that machine
19          didn't produce 200 wheels.
20  [AR 1224-25].

21

22      The vocational expert subsequently characterized Plaintiff's

23  supervisor job as skilled, light work.  (Id.).  He characterized

24  Plaintiff's forklift operator job as semi-skilled, medium work.  (AR

25  1225-26).

26

27      The ALJ posed a hypothetical question involving a person with the

28  following limitations: able to perform light work; no continuous lifting

or bending; no climbing of ladders or scaffolds; and requirement of a typical break after 2 hours of continuous standing or walking. (AR 1226). The vocational expert responded that Plaintiff could perform his past work as a supervisor of a wheels and rims shop. (Id.). The ALJ relied on the vocational expert's testimony and concluded that Plaintiff was capable of performing his past relevant work as a supervisor of a wheels and rims assembly line. (AR 23).

In this case, the ALJ implicitly determined that Plaintiff's past relevant work as a supervisor was classified as light work. (Id.). However, there appears to have been some confusion as to the physical exertion requirements of Plaintiff's past job. Plaintiff reported in his disability report and work history report that his duties as a supervisor included substantial manual labor, which was performed at the heavy exertional level.[8] (AR 81, 93-94, 141, 148-49). He indicated at the hearing, however, that he did not perform manual labor but rather oversaw employees and drafted reports. (AR 1224-25). Plaintiff explained that the description of his supervisor job contained in the reports - specifically, operating machines and loading and unloading pallets - should actually have been stated under the forklift operator job heading. (AR 1225).

It is unclear whether Plaintiff properly understood the ALJ's and vocational expert's questions concerning the job duties and physical demands of his prior work. First, the vocational expert's question

---

[8] Heavy work is defined as work involving "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

regarding whether Plaintiff operated machines and loaded and unloaded pallets as a supervisor of a wheels and rims company was not entirely clear.  Given that Plaintiff's job as a forklift operator required him to drive forklifts and load and unloaded trucks, it is possible that Plaintiff understood the vocational expert's question as one concerning Plaintiff's forklift operator job.  In fact, even the ALJ thought that the vocational expert was questioning Plaintiff about what Plaintiff had written in his reports concerning his duties as a forklift operator job.[9]  (AR 1224-25).  Moreover, when the vocational expert asked Plaintiff to describe his supervisor job, the ALJ interjected that Plaintiff "supervised people who did that work." (AR 1225).  Plaintiff never expressly stated that he did not do any manual labor.  Furthermore, in light of Plaintiff's reports in which he explicitly stated under the supervisor job heading that he "lift[ed] car rims to put on pallet's [sic]," it is doubtful that Plaintiff meant to write this description under the forklift operator job heading.  (AR 81, 93-94, 141, 148-49).  Indeed, under the forklift operator job heading, Plaintiff noted that he loaded plastic and steel pipes into trucks, not rims.  (AR 95).  On this record, the Court cannot find that the ALJ's determination of the physical demands of Plaintiff's past relevant work was supported by substantial evidence.  Upon remand, the ALJ should

---

[9]  Further, there may have been confusion due to a language barrier. Plaintiff could not speak English, and the record does not indicate whether Plaintiff's niece or a professional interpreter was used at the hearing.  (AR 1202-03).  If Plaintiff's niece was translating, it is quite possible that the ALJ's questions were not properly translated. For example, it is possible that Plaintiff thought the ALJ and vocational expert were asking questions only about his role in "supervising" employees and not about the aspect of his job requiring manual labor.

further inquire about the job duties and physical demands of his past relevant work before determining whether Plaintiff can return to that specific job.

## VII.

### CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: September 21, 2009.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[10] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."